# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA
# MIAMI DIVISION

CASE NO. 1:17-cv-21206-JLK

ROBERT JULIUS REDDISH,

    Plaintiff,

v.

EPOCA CORP D/B/A BRADLEY
FOUNDATIONS, DAVID BRADLEY,
MATTHEW BRADLEY, SCOTT BRADLEY,

    Defendants.
_____/

## ORDER DENYING DEFENDANTS'
## MOTION FOR SUMMARY JUDGMENT (DE 83)

THIS CAUSE comes before the Court upon Defendants' Motion for Summary Judgment (the "Motion") (DE 83), filed September 6, 2019. Defendants Epoca Corp. ("Epoca"), David Bradley, Matthew Bradley and Scott Bradley (the "Defendants") ask this Court to grant summary judgment because (1) Plaintiff Robert Reddish is an independent contractor and is not entitled to any relief under the Fair Labor Standards Act ("FLSA"); (2) Reddish cannot prove the elements of overtime or retaliation claims as a matter of law; and (3) Scott Bradley is not an "employer" under the FLSA. *Id.* at 21. The Defendants filed a Statement of Undisputed Facts in Support of Motion for Summary Judgment on August 30, 2019 (DE 82). Reddish responded to the Motion (DE 92) with a corresponding statement of material facts (DE 93) on October 4, 2019.

## I. BACKGROUND

The following facts are undisputed:

Epoca is a Florida corporation that engages in plumbing and construction services for new construction and renovation projects. *See* DE 82 ¶ 1. David Bradley is the Chief Executive Officer and President of Epoca (DE 82 ¶ 2), and Matthew Bradley is the Chief Financial Officer and Vice President of Epoca. *Id.* ¶ 3. Scott Bradley (the father of David and Matthew) works for Epoca (*id.* ¶ 4), but the parties dispute whether Scott is a manager of Epoca (thereby subjecting him to individual liability) or a mere employee. Plaintiff Robert Reddish worked for Epoca from June 2015 through February 2017 before filing the instant lawsuit. DE 1 Ex. A, DE 1-3. Reddish performed demolition services, removed debris from construction sites, and operated machinery during his alleged employment. *See* DE 82 ¶¶ 6–9. Reddish sued the Defendants for unpaid overtime wages and retaliation under the Fair Labor Standards Act on April 2, 2017 (DE 1).

## II. LEGAL STANDARD

Summary judgment is appropriate where there is "no genuine issue as to any material fact and [] the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). An issue is genuine if a reasonable jury could return a verdict for the nonmoving party. *Mize v. Jefferson City Bd. of Educ.*, 93 F.3d 739, 742 (11th Cir. 1996). A fact is material if it may affect the outcome of the case under the applicable substantive law. *Allen v. Tyson Foods, Inc.*, 121 F.3d 642, 646 (11th Cir. 1997).

If a reasonable fact finder could draw more than one inference from the facts, creating a genuine issue of material fact, summary judgment should not be granted. *Samples ex rel. Samples v. City of Atlanta*, 846 F.2d 1328, 1330 (11th Cir. 1988). The moving party has the burden of establishing both the absence of a genuine issue of material fact and that it is entitled to judgment as a matter of law. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574,

586–87 (1986). On a motion for summary judgment, the court views the evidence and all reasonable inferences in the light most favorable to the non-moving party. *Davis v. Williams*, 451 F.3d 759, 763 (11th Cir. 2006).

## III. DISCUSSION

Defendants argue they are entitled to summary judgment because (1) Reddish is not an "employee" under the Fair Labor Standards Act and (2) Reddish has failed to establish the elements of his overtime or retaliation claims as a matter of law. Defendants also move to establish as a matter of law that Scott Bradley is not individually liable with Epoca for any FLSA violations.

### A. Independent Contractor vs. Employee

The FLSA does not apply to independent contractors. *See Murray v. Playmaker Servs. LLC*, 512 F. Supp. 2d 1273, 1276 (S.D. Fla. 2007). Rather, the FLSA only applies to "employees," which are "individual[s] employed by an employer." 29 U.S.C. § 203(e)(1). Whether an individual qualifies as an employee or independent contractor is a question of law for the Court. *Antenor v. D & S Farms*, 88 F.3d 925, 929 (11th Cir. 1996). Accordingly, courts look to the "economic reality" of the relationship between the parties and whether the relationship demonstrates dependence. *See Scantland v. Jeffry Knight, Inc.*, 721 F.3d 1308, 1311 (11th Cir. 2013); *see also Bartels v. Birmingham*, 332 U.S. 126, 130 (1947) ("[E]mployees are those who as a matter of economic reality are dependent upon the business to which they render service."). The "economic realities test" includes six factors, discussed in detail below. No single factor is dispositive, and courts may consider any combination of factors that accurately reflects the economic reality of the relationship. *Murray*, 512 F. Supp. 2d at 1277.

1. **Control**

The first factor considers the degree of the alleged employer's control over the manner in which work is to be performed. Construing the facts in the light most favorable to Reddish as the nonmoving party, the Court concludes that genuine issues of material fact remain as to the extent of Defendants' control over Reddish's work. "Control is only significant when it shows an individual exerts such a control over a meaningful part of the business that she stands as a *separate economic entity*." *Scantland*, 721 F.3d at 1313 (emphasis added) (quoting *Usery v. Pilgrim Equip. Co., Inc.*, 527 F.2d 1308, 1312–13 (5th Cir. 1976)).

In the instant case, the "normal [daily] practice was to show up for work" (DE 93 ¶ 11) at "the warehouse," wherefrom Defendants would send Reddish to the various job sites. Reddish Depo. at 215, ¶¶ 8–11 (DE 82-5 at 55). Reddish would advise when work was completed by sending pictures of completed projects to David and Matthew Bradley. (DE 82 ¶ 22). David and Matthew Bradley would periodically review completed work at the job sites where Reddish was working. David Bradley Aff. ¶ 3 (DE 94-1). Defendants told Reddish what job sites to attend and what tasks to complete, although the parties dispute the amount of supervision that Reddish received. *Compare* David Bradley Aff. ¶ 3 (DE 94-1) *with* (DE 93 ¶ 36). After Reddish would send photographs to David and Matthew and inform them that he had completed a project, they would sometimes respond: "Good job. I need you to go to another site." Reddish Depo. at 94, ¶¶ 19–20 (DE 82-5 at 24). Then, Reddish would either "[g]et in their vehicle and go to another site" or "go back to the warehouse" if there was not another project at that time. *Id.* at 21–25.

The parties also dispute whether Reddish maintained other jobs or solicited work from other companies during the period of his alleged employment with Epoca. According to Defendants, Reddish "actually drew income from others while working with Epoca." DE 83 at 4.

4

But Reddish states that he *only* worked for Defendants (and no one else) during the period of his alleged employment. DE 93 ¶ 8. Albert Sierra, the owner of Atlantic Coast Construction ("ACC"), stated in his affidavit that Reddish solicited work from ACC (and that Reddish even worked for ACC at one point) (Sierra Aff. ¶¶ 4–5 DE 82-7), but Reddish disputes that he ever solicited work from ACC or ever performed work for anyone other than Defendants during the relevant time period. Reddish Aff. ¶ 7 (DE 93-1).

Reddish owned a separate company entitled "All in Demolition, LLC." (DE 82 ¶ 7). But Reddish disputes that he ever conducted business under "All in Demolition, LLC" (or any other business name, for that matter). DE 93 at 2 ¶ 7. Instead, he simply "filled out a form on Sunbiz.org to register the entity name . . . [and later] realized that he could not afford to operate the business and never did." *Id.* The company was administratively dissolved for failure to file an annual report. *Id.* The company is currently on "INACTIVE" status. *Id.*

Construing these facts in the light most favorable to Reddish as the nonmoving party, the Court finds that the first factor of the "economic realities test" weighs in favor of employee status. However, genuine issues of material fact remain as to the amount of control exercised by Defendants, supporting denial of summary judgment on the "independent contractor" argument.

2. **Opportunity for Profit or Loss**

The second factor considers the alleged employee's opportunity for profit or loss based on his or her managerial skill. Defendants assert that (1) Reddish was compensated by the job and not the hour,[1] (2) Reddish was free to accept jobs from other companies, and (3) Reddish was permitted to decline work from Epoca (DE 83 at 9). *Id.* But in his deposition, Reddish states that he was paid

---

[1] Defendants appear to contradict this argument in their Statement of Material Facts, where they state that Reddish "was paid a different *hourly* wage depending on the work he performed." (DE 82 ¶ 10) (emphasis added).

5

by the hour and not the job. Reddish Depo. at 38, ¶¶ 10–25 (DE 82-5 at 3). In fact, Epoca's payroll records demonstrate that Reddish was paid hourly on numerous occasions (DE 82-1 Ex. B).

Drawing all factual inferences in favor of Reddish, the Court concludes that Reddish's opportunity for profit or loss was limited at best. Defendants argue that "[Reddish] controlled his ability to earn more money and take on more job [sic] depending on his efficiency" (DE 83 at 9). But even if that were true, "[a]n individual's ability to earn more by being more technically proficient is unrelated to an individual's ability to earn or lose profit via his managerial skill, and it does not indicate that he operates his own business." *Scantland*, 721 F.3d at 1317;[2] *see also Rutherford Food Corp. v. McComb*, 331 U.S. 722, 730 (1947) (holding that a job whose profits are based on efficiency is "more like piecework than an enterprise that actually depended for success upon the initiative, judgment or foresight of the typical independent contractor"). Instead, Reddish's opportunity for profit or loss was largely based on the amount of work assigned to him, which suggests an employer-employee relationship.

### 3. Investment in Equipment or Materials

The third factor considers the alleged employee's degree of investment in equipment or materials. The parties dispute whether Reddish used his own materials when performing his duties. According to Reddish, "[he] did not have to invest in his own tools, supplies, or equipment. All tool[s], supplies, and equipment to do Reddish's job for Defendants were provided to Reddish by Defendants." DE 93 ¶ 35 (internal citations omitted). The Defendants dispute this fact and claim that "[Reddish] would use equipment he owned or purchased and occasionally borrowed Defendants' equipment. For all materials purchased, Plaintiff was reimbursed by Defendants, and

---

[2] Moreover, in *Scantland*, the Eleventh Circuit reasoned that an alleged employee had minimal opportunity for profit or loss where he could not negotiate the rate of pay. 721 F.3d at 1315. Upon drawing all factual inferences in favor of Reddish, the same rationale applies here.

6

that cost was ultimately forwarded to Defendants' clients." DE 83 at 10. In short, genuine issues of material fact remain as to whether Reddish invested in his own equipment or materials.

### 4. Special Skill

The fourth factor considers the amount of special skill required to complete the alleged employee's duties and tasks. Here, this factor weighs in favor of independent contractor status but only slightly. Reddish's duties included demolishing walls, removing pipes, digging up trenches, installing drain fields, installing drain field pipes, cleaning up job sites, picking up trash from job sites, refilling dirt in excavation sites, sealing newly-installed pipes with black tar, and installing plumbing drains including French drains. DE 93 ¶ 9. Reddish testified that he did not receive training or education to learn how to perform his job. Reddish Depo. at 89, ¶¶ 19–24 (DE 85 at 19). Defendants argue that "[c]ommon sense dictates that an average person would not be able to perform [demolition and construction related services] without first having been trained or learning how to do them with careful supervision." DE 94 at 2. And because Defendants did not provide Reddish with those necessary skills, Defendants believe that Reddish was an independent contractor. DE 83 at 10. However, the record would benefit from additional evidence as to the skill required to complete Reddish's duties. Factual issues remain on this point.

### 5. Permanence and Duration

The fifth factor considers the permanence and duration of the alleged employment relationship. Here, Reddish worked for Defendants from June 2015 through February 2017. DE 1 Ex. A, DE 1-3. The Defendants have furnished the Court with Epoca's payroll records, including itemized payments made to Reddish during the period of his alleged employment. *See* DE 82-1 Ex. B. The Defendants point to several weeks and months where Reddish did not appear on the Epoca payroll (DE 83 at 8), suggesting that Reddish was an independent contractor because he

7

was not consistently employed by Defendants. However, Reddish testified that at one point, Epoca was "three [or] four weeks behind [on issuing checks] and they had to catch up" by issuing a check for a larger amount of payment than they normally would. Reddish Depo. at 185, ¶¶ 4–7 (DE 82-5 at 37). And although Defendants claim they always paid Reddish by check (DE 83 at 17), Reddish states in his affidavit that "Defendants paid [him] partially in cash" on "at least one occasion." Reddish Aff. ¶ 15 DE 93-1. The parties also dispute whether Reddish drew income from other employers while working for Epoca. *Compare* (DE 83 at 5) *with* (Reddish Aff. ¶ 7).

According to Defendants, Reddish's statement that he was paid in cash on "at least one occasion" should be disregarded because that statement contradicts his prior deposition testimony that he was always paid by check.[3] However, because the Court disagrees that Reddish has contradicted his "previously given *clear* testimony," *id.* (emphasis added), the Court may consider Reddish's statement that he was paid in cash when deciding whether there is a genuine issue of material fact as to the permanency and duration of the relationship. Because the parties dispute whether, among other things, Reddish was ever paid in cash and whether Reddish worked for other employers during the period of his alleged employment, genuine issues of material fact remain precluding summary judgment.

### 6. Integral Part of Alleged Employer's Business

The sixth and final factor considers the extent to which the alleged employee's services are integral to the alleged employer's business. "[W]hen the business's continuation depends integrally upon the performance of certain work, *the worker who performs that work* is more likely to be considered an employee and not an independent contractor." *Zouai v. Evans*, Case No: 14-23936-CIV-MORENO, 2015 WL 4768293, at *4 (S.D. Fla. Aug. 11, 2015) (emphasis added).

---

[3] *See Van. T. Junkins and Assoc., Inc. v. U.S. Industries, Inc.*, 736 F.2d 656, 657 (11th Cir. 1984).

This factor weighs in favor of employee status in the instant case. There is no evidence in the record suggesting that Defendants could complete a construction project without pipe installation, demolition, heavy machinery operation, drain field installation, or plumbing drain installation. Although these tasks are not specific to Reddish's skillset, that does not negate employee status. The test is whether the services rendered are integral, not whether the employee himself is integral to the business.[4] In any event, this factor could benefit from a more thoroughly developed record.

### 7. Weighing the Factors

Construing these facts in the light most favorable to Reddish as the nonmoving party, the Court finds that numerous genuine issues of material fact preclude summary judgment on this argument.

### B. Overtime Claim

Defendants also move for summary judgment on Reddish's overtime claim, arguing that summary judgment is warranted even if Reddish is an employee because he cannot meet the elements of his overtime claim. Upon consideration, and being otherwise fully advised, the Court concludes that Defendants' motion for summary judgment on Reddish's overtime claim should be denied.

The Fair Labor Standards Act requires employers to provide overtime compensation at the rate of "time and a half" to employees for all hours worked beyond forty hours in a given week. 29 U.S.C. § 207(a)(1). An employee "has the burden of proving that he performed work for which

---

[4] For example, "[c]ourts have routinely noted that the presence of exotic dancers [is] essential, or obviously very important, to the success of a topless nightclub." *McFeeley v. Jackson St. Entm't, LLC*, 47 F. Supp. 3d 260, 273 (D. Md. 2014) (internal quotations omitted). Courts have held exotic dancers to be employees despite their services being easily performed by other individuals with similar skillsets. The service itself is what's integral to the business. So too here.

he was not properly compensated." *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687 (1946). "When the employer has kept proper and accurate records the employee may easily discharge his burden by securing the production of those records." *Id.* However, "where the employer's records are inaccurate or inadequate and the employee cannot offer convincing substitutes . . . an employee has carried out his burden if he proves that he has in fact performed work for which he was improperly compensated and if he produces sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference." *Anderson*, 328 U.S. at 687. If the employee satisfies this burden, "[t]he burden then shifts to the employer to come forward with evidence of the precise amount of work performed or with evidence to negative the reasonableness of the inference to be drawn from the employee's evidence." *Id.* at 687–88.

Here, Reddish attests that he worked an average of fifty hours per week but that he never received overtime compensation for those additional hours (DE 93 ¶ 9). He provided the Court with a photograph of a timesheet Defendants required him to complete during his employment, along with a timesheet for another worker named "Charles Brown." (DE 82-9, p. 42). The timesheet, signed by Reddish, reflects that Reddish worked fifty hours during one week in July 2015. *Id.* The Court has not been provided with any other timesheets. Additionally, the Court has considered Epoca's payroll records which indicate several weeks where Reddish worked more than forty hours (DE 82-1 Ex. B). But Reddish's paystubs fluctuate in the amount of payment and do not clearly indicate whether he was paid overtime for those weeks, creating genuine issues of material fact that preclude summary judgment on his overtime claim.

### C. Retaliation Claim

Defendants also move for summary judgment on Reddish's retaliation claim. Section 215(a)(3) of the Fair Labor Standards Act prohibits employers from taking retaliatory actions against employees who engage in protected activity. To prove retaliation, a plaintiff must show

that: (1) he engaged in activity protected under the act; (2) he subsequently suffered adverse action by the employer; and (3) a causal connection existed between the employee's protected activity and the adverse employment action. *Wolf v. Coca-Cola Co.*, 200 F.3d 1337, 1342–43 (11th Cir. 2000).

In the instant case, Reddish testified at one point in his deposition that Matthew Bradley did not reduce his hours because of his demand for overtime. Reddish Depo. at 222–23, ¶¶ 17–25 (DE 82-5 at 62). But at a separate point in the same deposition, Reddish testified that Matthew Bradley did, in fact, reduce his hours and end his employment for complaining about overtime. *Id.* at 91 ¶¶ 1–12 (DE 82-5 at 21). Despite these seemingly contradictory statements, a reasonable inference to draw from the record is that Reddish may have complained about overtime on at least two separate occasions, including once toward the beginning of his employment and once toward the end. Thus, a reasonable jury could conclude that Reddish made two complaints to Matthew Bradley about overtime, and that Reddish's first statement in his deposition (where he claimed his hours were not reduced) referred to his first complaint about overtime while his second statement (where he claimed his hours were reduced *and* he was terminated) referred to his second complaint about overtime.[5] Accordingly, genuine issues of material fact remain.

### D. Individual Liability of Scott Bradley

Defendants also move to establish as a matter of law that Scott Bradley is not individually liable with Epoca for any FLSA violations. Upon a thorough review of the record, the Court concludes that genuine issues of material fact remain precluding summary judgment on this argument. Under the FLSA:

---

[5] For this reason, Defendants' reliance upon *Van T. Junkins* is misplaced. 736 F.2d at 657. Reddish's subsequent affidavit (DE 93-1) does not contradict any "previously given clear testimony." *Id.* Instead, the affidavit may help explain the confusion that arose from Reddish's seemingly contradictory statements in his deposition.

> Section 203 broadly defines an employer as "any person acting directly or indirectly in the interest of an employer in relation to an employee." Whether an individual falls within this definition "does not depend on technical or 'isolated factors but rather on the circumstances of the whole activity.'" The Eleventh Circuit has recognized that "[t]he overwhelming weight of authority is that a corporate officer with operational control of a corporation's covered enterprise is an employer along with the corporation, jointly and severally liable under the FLSA for unpaid wages." In order to qualify as an employer for this purpose, the officer "must either be involved in the day-to-day operation or have some direct responsibility for the supervision of the employee."

*Game v. Hospicecare of Se. Florida, Inc.*, 09-21348-CIV, 2009 WL 10699939, at *2 (S.D. Fla. Aug. 7, 2009) (internal citations omitted). The Eleventh Circuit also turns to the "economic reality" of the relationship between the parties, considering "whether the alleged employer (1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records." *Villarreal v. Woodham*, 113 F.3d 202, 205 (11th Cir. 1997).

In the instant case, it is unclear whether Scott Bradley was a "corporate officer" of Epoca for FLSA purposes. Scott Bradley is listed as a "corporate officer/director" in the "Detail by Entity Name" of Epoca's listing on Sunbiz.org, *see* DE 93 ¶ 4, but the parties dispute the scope of his involvement in Epoca's daily activities. Reddish states that Scott Bradley directed Reddish's work, had the authority to hire and fire employees, managed the day-to-day operations of Epoca, directed Reddish on which job sites to attend, signed Reddish's paychecks, and transported Reddish to and from job sites. *Id.* ¶ 5.

Defendants dispute that Scott Bradley would maintain employment records, would supervise or control the work of employees, would manage the daily operations of Epoca, or had the power to hire and fire employees. *See* DE 83 at 20. According to the Defendants, Scott Bradley would simply purchase materials necessary for Epoca's construction projects. *Id.* Because genuine

issues of material fact remain as to Scott Bradley's level of involvement in the daily activities of Epoca, Defendants' Motion should be denied.

Accordingly, it is **ORDERED, ADJUDGED, AND DECREED** that Defendants' Motion for Summary Judgment **(DE 83)** be, and the same is, hereby **DENIED**.

**DONE AND ORDERED** in Chambers at the James Lawrence King Federal Justice Building and U.S. Courthouse, Miami, Florida this 25th day of October, 2019.

                                      JAMES LAWRENCE KING
                                      UNITED STATES DISTRICT JUDGE

**cc:** **All counsel of record**